UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    Case No. 08-20548

v.                                     Honorable Nancy G. Edmunds

BURTON NORFLEET (D-3),

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE [175]**

Defendant Burton Norfleet is currently in the custody of the Federal Bureau of Prisons ("BOP") at the Beaumont Low Federal Correctional Institute in Texas. The matter is before the Court on Defendant's motion for compassionate release due to the COVID-19 "emergency." (Dkts. 175, 176.) The government opposes Defendant's motion. (Dkts. 179, 182.) Defendant has filed a reply. (Dkt. 183.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court DENIES Defendant's motion for compassionate release.

**I.    Background**

On December 9, 2015, Defendant pleaded guilty to one count of conspiracy to possess with intent to distribute a controlled substance (heroin) in violation of of 21 U.S.C. §§ 841(a)(1), 846. (Dkt. 54.) Defendant was sentenced to 120 months of imprisonment. (Dkt. 89.) His projected release date is August 24, 2025.

1

Defendant is currently 52 years old.  On May 19, 2020, Defendant submitted a request for administrative remedy to the BOP, asserting he faces a higher risk of death if he contracts COVID-19 due to his blood clots and requesting home confinement under the CARES Act.  (*See* dkt. 175-1, PgID 1650.)  That request was denied.  (*See id.* at PgID 1652.)

Defendant, thru counsel, now moves this Court for release based on the health concerns associated with the COVID-19 pandemic.  He notes he has blood clots and sinus infections and that at the time of his motion, there were eight active cases of COVID-19 at his facility.  Defendant states that it has been over a year since he was disciplined and that he has taken steps towards his rehabilitation, including the completion of a number of classes.  Finally, he notes he was released on bond during the pendency of this case and allowed to voluntarily surrender to the BOP.

**II.    Analysis**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> 
> (i)     extraordinary and compelling reasons warrant such a reduction; . . .
> . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The statute thus requires a defendant to both satisfy the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a sentence reduction.

### A.  Whether Defendant Exhausted His Administrative Remedies

In the early stages of the COVID-19 pandemic, some courts excused a defendant's failure to exhaust his or her administrative rights with the BOP prior to bringing a motion for compassionate release. The Sixth Circuit has since held, however, that the administrative exhaustion requirement is mandatory and "must be enforced" when "properly invoked." *See United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). In so doing, the court noted that the exhaustion requirement ensures that prison administrators can both "prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *See id.* at 835.

The government argues that Defendant did not satisfy the exhaustion requirement in this case because in his administrative request, he sought home confinement under the CARES Act, while he now seeks compassionate release under the First Step Act. As one court stated, however, "[h]ome confinement can be viewed as a term of art, or it can amount to a generic request to be allowed to reduce a sentence to eliminate part of a prison term." *See United States v. Ball*, No. 14-20117, 2020 U.S. Dist. LEXIS 149666, at *7 (E.D. Mich. Aug. 19, 2020). More generally speaking, courts have held that "[t]he exhaustion requirement should not be applied hyper-technically, and the request to the warden need not be identical in detail or specificity to the motion made in court." *See United States v. Haynes*, No. 14-20083, 2020 U.S. Dist. LEXIS 145107, at *4 (E.D. Mich. Aug. 13, 2020) (internal quotation

3

marks and citation omitted).  Here, Defendant clearly sought home confinement due to the pandemic and his blood clots in his administrative request.[1]  While he mentioned the CARES Act and not the First Step Act, he provided enough information to allow the Warden to investigate and address the issue.  Thus, the Court finds that Defendant has exhausted his administrative remedies.

### B.  Whether Defendant is Entitled to a Sentence Reduction

Defendant argues that the heightened risk he faces from COVID-19 due to his blood clots and sinus infections, along with the spread of the virus within the federal prison system, constitutes extraordinary and compelling reasons in this case.  The government argues, however, that Defendant has failed to establish he is entitled to the relief he seeks.

The applicable Sentencing Commission policy statement sets forth the following four categories of "extraordinary and compelling reasons" for release:  (A) medical condition of the defendant, (B) age of the defendant, (C) family circumstances, and (D) a "reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" "[a]s determined by the Director of the Bureau of Prisons," also known as the catch-all provision.  See U.S.S.G. § 1B1.13, commentary n.1.  The medical condition category includes cases where "[t]he defendant is—(I) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the

---

[1] It appears Defendant submitted along with his administrative request a form which described his efforts towards informally resolving the issue as "spoke with counselor – I'd like to be put in for compassionate release program."  (Dkt. 175-1, PgID 1653.)

4

defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, commentary n.1(A)(ii).

Here, Defendant's medical records confirm that he has blood clots and sinus infections. However, there is no evidence that these medical conditions are risk factors for severe illness from COVID-19.[2] Nor are blood clots or sinus infections identified as such by the Centers for Disease Control and Prevention. *See generally* People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. And while Defendant's generalized concerns regarding the COVID-19 pandemic are legitimate, his risk of contracting the virus is the same as any other inmate in federal custody. Thus, Defendant has not met his burden of establishing that his health concerns, even in the context of the COVID-19 pandemic, constitute extraordinary and compelling reasons warranting a sentence reduction. And even if Defendant could meet this burden, the Court would not grant him compassionate release.

Section 1B1.13 provides that a defendant's sentence should be reduced under § 3582(c)(1)(A) only if releasing the inmate will not pose a danger to the safety of others or the community. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)). Also, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a) to the extent that they are applicable. *See* § 3582(c)(1)(A). These factors include the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law

---

[2] The research Defendant cites to indicates that blood clots are a possible complication of COVID-19, not a risk factor.

and provide just punishment for the offense, general and specific deterrence, protection of the public, and the need to avoid unwarranted sentencing disparities. *See* § 3553(a).

While Defendant was found not to be a danger to society and released on bond during the pendency of this case, his underlying offense is very serious. Defendant was therefore appropriately sentenced to a term of 120 months of imprisonment. He has served only four years of that ten-year term so far. Thus, even though the Court commends Defendant on his efforts towards positive rehabilitation, it finds that a sentence reduction would not be consistent with the § 3553(a) factors.

### III. Conclusion

Based upon the foregoing, Defendant's motion for compassionate release is DENIED.

SO ORDERED.

                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: October 6, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 6, 2020, by electronic and/or ordinary mail.

                s/Lisa Bartlett
                Case Manager